IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOSHUA CACHO, <br><br> Plaintiff, <br><br> v. <br><br> FIA LIQUIDATION COMPANY, INC., d/b/a FIORELLA INSURANCE AGENCY, INC., a Florida Corporation <br><br> Defendants. | § § § § § § § § § § § § § § § § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.  The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

2.  Defendant FIA LIQUIDATION COMPANY, INC. d/b/a FIORELLA INSURANCE AGENCY, INC. ("FIA" "Defendant") is a corporation organized and existing under the laws of Florida with its principal address at 7004 SE Busch Street, Palm City. Florida 34990 and can be served via registered agent Evelyn F. Bassion at 7004 SE Busch Street, Palm City. Florida 34990.

**JURISDICTION AND VENUE**

3.  Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

4.      This Court has general personal jurisdiction over the Defendant because they have repeatedly placed calls to Florida residents, and derived revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

5.      Defendant maintains sufficient minimum contacts with this District, have purposefully availed themselves of the privilege of doing business in this District, maintains a registered agent in Florida, and possess such significant and continuous presence in this District such as to be subject to the personal jurisdiction of this Court.

## VENUE

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

7.      This Court has venue over Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

4

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21. Plaintiff's personal cell phones (407) 577-3881 and (407) 577-3822 have been registered on the National Do-Not-Call Registry since July 2, 2021.

22. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

23. Defendant FIA works as an "insurance broker" for a variety of different industries including but not limited to health, life, auto, homeowners, and dental providers as described on their website they own and control https://fiorellainsurance.com. *See Exhibit A.*

24. Defendant FIA gets paid a commission fee for every insurance policy they sell on behalf of their insurance providers.

25. On February 26, 2021, Defendant FIA filed an amended name change with the Florida Secretary of State to change their name from Fiorella Insurance Agency, Inc. to FIA Liquidation Company, Inc. *See Exhibit B.*

26. As part of their marketing, Defendant FIA makes illegal robocalls to thousands of consumers with prerecorded voice messages soliciting insurance coverage.

27. Plaintiff received at least eleven (11) robocalls with a prerecorded voice message within a seven-day period to his personal cell phones 3881 and 3822 from Defendant FIA soliciting health insurance coverage ("the calls").

28. Plaintiff has never been a customer or client of Defendant FIA and did not give his prior express written consent to receive the calls.

29. **Call #1 - On** August 22, 2022, Plaintiff received a phone call to his personal cell phone ending in 3822 from Defendant FIA from phone number (352) 517-5816. Plaintiff answered and heard a prerecorded voice message that stated,

"Hello can you hear me okay? Hi, my name is Shawn and I'm calling from insurance services and the reason for my call today is we partner with the countries top auto insurance providers and we're looking to save you up to thirty percent on what your currently paying you are currently paying for auto insurance correct? So if we could get you a better deal on your auto insurance you would consider it as an option right? What is your zip code? Alright, can I please have the primary car the year make and the model? Okay, can you verify the spelling of your first name please? Okay and spell your last name for me please. Okay, what will happen next is you will be called back by an insurance rate specialist who will be able to save you some money on your insurance is that okay? Alright, yeah and what year were you born? Okay, what is the name of your current insurance? And one more thing you can save even more money if you bundle your auto quotes with your home or rental insurance would you be interested in bundling and getting quotes on both home or rental insurance as well? Okay, if we could get you a good deal on your health insurance as well would you consider that as an option? And how many people are in your household? Are you currently insured? I've gone ahead and entered your information through our website you'll be getting a call shortly be sure to let the agent know you signed up online to get the best offers thank you so much for your time today have a great day."

30. The prerecorded voice message does not state or provide Defendant FIA's name in the message.

31. Plaintiff followed the prompts for the sole purpose of identifying the company responsible for the illegal robocall.

32. The prerecorded voice message indicates Plaintiff will be receiving a call shortly from an "agent" and does not say from Defendant FIA.

33. On two occasions Plaintiff spoke directly with representatives from Defendant FIA and received two emails from Defendant FIA's representatives which confirmed the company responsible for the calls. *See Exhibit C.*

34. **Call #5** - On August 24, 2022, Plaintiff received a phone call to his personal cell phone ending in 3822 from Defendant FIA from phone number (407) 698-4666. Plaintiff answered and heard a prerecorded voice message for a health insurance quote that stated,

"Hello it's Ava from Fiorella Insurance you recently requested a quote from us we wanted to let you know that the month is nearly over time is running out to enroll in an active Florida blue policy by the first we offer Florida blue coverage starting at zero dollars a month for those who qualify if you're interested in seeing if you can save big on medicines doctor visits and more press one now."

35. The prerecorded voice message states "you recently requested a quote" confirming this call was connected to **Call #1.**

36. Plaintiff "pressed one" and was then transferred to a representative from Defendant FIA named David.

37. David asked Plaintiff if he was looking for a quote on health and dental plan.

38. Plaintiff advised David he was interested in health insurance for the sole purpose of identifying the company responsible for the calls.

39. David then transferred Plaintiff to a "licensed agent" from Defendant FIA named Michelle.

40. Michelle collected Plaintiff's name, address, employer, asked qualifying questions and solicited Plaintiff for a health insurance policy from Florida Blue and a Dental policy from IHC Dental which are two of Defendant FIA's insurance providers.

41. Michelle advised Plaintiff the cost for both insurance policies would be 204.34/mnth.

7

42. Defendant FIA gets paid a commission fee for every policy they sell on behalf of Florida Blue and IHC Dental.

43. Plaintiff received an email from Michelle with the quote for both policies. *See Exhibit C.*

44. **Call #10** - On August 26, 2022, Plaintiff received a phone call to his personal cell phone ending in 3881 from Defendant FIA from phone number (407) 698-4666. Plaintiff answered and heard a prerecorded voice message for a health insurance quote that stated,

"Hello it's Ava from Fiorella Insurance you recently requested a quote from us we wanted to let you know that the month is nearly over time is running out to enroll in an active Florida blue policy by the first we offer Florida blue coverage starting at zero dollars a month for those who qualify if you're interested in seeing if you can save big on medicines doctor visits and more press one now."

45. The prerecorded voice message states "you recently requested a quote" confirming this call was connected to **Call #1.**

46. Plaintiff "pressed one" and was then transferred to a representative from Defendant FIA named Valerie.

47. Valerie asked Plaintiff if he was looking for a quote on health insurance.

48. Valerie then transferred Plaintiff to a "licensed agent" from Defendant FIA named John.

49. John solicited Plaintiff for a health insurance policy on behalf of Florida health care plans and Dental policy on behalf of IHC Dental which are two of Defendant FIA's insurance providers.

50. John advised Plaintiff the cost for both insurance policies would be $167/mnth.

51. Defendant FIA gets paid a commission fee for every policy they sell on behalf of Florida Blue and IHC Dental.

52. Plaintiff received an email from John showing the coverage of both policies. *See Exhibit C.*

53. The reviews on Defendant FIA's website prove that Plaintiff has not been the only one that has received illegal robocalls from Defendant FIA https://fiorellainsurance.com/facebook-reviews/. *See Exhibit D.*

54. Defendant FIA has been sued numerous times over the course of the past four years for TCPA violations *Newberry v. Fiorella Insurance Agency, Inc.*, No. 1:18-cv-24738-KMW (S.D.FL., Nov. 13, 2018), *Hackett v. Fiorella Insurance Agency, Inc.*, et al No. 6:18-cv-02150-PGB-GJK (M.D.FL., Dec. 17, 2018), *Johnson v. Fiorella Insurance Agency, Inc.,* No. 3:19-cv-00675-TJC-JK (M.D.FL., Jun. 07, 2019), *Holbrooks v. Fiorella Insurance Agency, Inc.,* No. 8:20-cv-00048-WFJ-SPF (M.D.FL., Jan. 08, 2020), *Thompson v. FIA Liquidation Company, Inc.*, No. 2:21-cv-14138-AMC (S.D.FL., Mar. 24, 2021), *Hargrave v. FIA Liquidation Company, Inc.*, No. 8:21-cv-00944-VMC-JSS (M.D.FL., Apr. 21, 2021), *May v. FIA Liquidation Company, Inc.*, No. 6:21-cv-01997-CEM-DAB (M.D.FL., Nov. 24, 2021), *Garwood v. FIA Liquidation Company, Inc.*, No. 6:21-cv-02094-WWB-DCI (M.D.FL., Dec. 15, 2021) and continue their illegal behavior because violating the TCPA benefits Defendant FIA financially.

55. Each and every phone call Plaintiff received from Defendant FIA was a telephone solicitation as defined by 47 U.S.C. § 227(a)(4) and solicited a health insurance policy to Plaintiff.

56. Plaintiff did not ask Defendants to call him regarding life insurance.

57. Table A displays calls made to Plaintiff by Defendants.

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 08/22/2022 | 11:39 AM | 352-517-5816 | Pre-recorded voice message from FIA Called phone 3822 |

| 2 | 08/22/2022 | 1:36 PM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3822 |
| 3 | 08/23/2022 | 2:46 PM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3822 |
| 4 | 08/24/2022 | 2:18 PM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3822 |
| 5 | 08/24/2022 | 3:11 PM | 407-698-4666 | Pre-recorded voice message from FIA Spoke with David and Michelle. Called phone 3822 |
| 6 | 08/25/2022 | 11:00 AM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3881 |
| 7 | 08/25/2022 | 11:00 AM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3881 |
| 8 | 08/25/2022 | 11:59 AM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3881 |
| 9 | 08/25/2022 | 11:59 AM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3881 |
| 10 | 08/26/2022 | 1:09 PM | 407-698-4666 | Pre-recorded voice message from FIA Spoke with Valerie and John. Called phone 3881 |
| 11 | 08/26/2022 | 2:08 PM | 407-698-4666 | Pre-recorded voice message from FIA Called phone 3881 |

58. The calls 2-11 Plaintiff received from Defendant FIA all started with the same pre-recorded voice message "Hello it's Ava from Fiorella Insurance."

59. No emergency necessitated none of the alleged phone calls.

60. Plaintiff sent an internal do-not-call policy request to Defendant FIA to customerservice@fioins.com on September 10, 2022, which is an email listed on their face book page they own and control https://www.facebook.com/fiorellainsurance/.

10

61. Despite the email, Defendant FIA failed and/or refused to send Plaintiff a do-not-call policy.

62. Upon information and belief, the Defendant FIA did not have a written do-not-call policy while it was sending Plaintiff the illegal robocalls.

63. Upon information and belief, Defendant FIA did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

64. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

65. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

66. Defendant FIA's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

67. Defendant FIA's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

68. Defendant FIA's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

69. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phones are residential numbers

70. The calls were to Plaintiff's cellular phones 3881 and 3822 which are Plaintiff's personal cell phones that he uses for personal, family, and household use. Plaintiff also uses his cell

phones for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phones are not primarily used for any business purpose.

## CAUSES OF ACTION:

### COUNT ONE:
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. Defendant and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least eleven (11) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using a prerecorded voice message without prior express written consent.

100. Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

101. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

102. Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-

emergency telemarketing calls to any cellular telephone number using a prerecorded voice message and/or without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

103. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104. Defendant called Plaintiff's private residential telephone numbers which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

105. Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

106. Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

107. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

13

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

108. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

109. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

110. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

111. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against the defendant jointly and severally as follows:

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 11 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 11 calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 14, 2022,                                Respectfully submitted,

*[signature]*

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746
407-577-3881